IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROSALIE GALLEGOS,

      Plaintiff,

      v.                                                   Civ. No. 19-397 SCY

ANDREW SAUL, Commissioner of Social
Security,[1]

      Defendant.

## MEMORANDUM OPINION AND ORDER[2]

Claimant Rosalie Gallegos argues that the Administrative Law Judge who denied her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, committed three instances of error. Although the Court disagrees with Ms. Gallegos's first two arguments, it finds the ALJ prevented her from developing evidence that the requirements of her past relevant work were different than those envisaged for her job title in the Dictionary of Occupational Titles. As a result, the Court GRANTS Ms. Gallegos's motion and remands this matter for further consideration consistent with this Opinion.

## BACKGROUND AND PROCEDURAL RECORD

Claimant Rosalie Gallegos suffers from the following severe impairments: arthritis of the spine, hypothyroidism, systemic lupus erythematosus, rheumatoid arthritis, and Sjorgren's

---

[1] Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17, 2019 and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Doc. 14.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

syndrome. Administrative Record ("AR") at 19. Ms. Gallegos has a college degree and has past relevant work as an assistant principal, program coordinator, and program director. AR 71, 228. At the time of her hearing, Ms. Gallegos was sixty-four years old. AR 45.

On April 15, 2015, Ms. Gallegos filed a Title II application for benefits, alleging disability beginning July 1, 2010. AR 16. Her application was initially denied on September 10, 2015, and upon reconsideration on July 27, 2016. AR 122, 133. Ms. Gallegos requested a hearing on August 25, 2016. AR 161. Administrative Law Judge ("ALJ") Michelle K. Lindsay conducted a hearing in Albuquerque on August 22, 2017. AR 31. Ms. Gallegos appeared without legal representation and testified. *Id.* The ALJ also took testimony from Vocational Expert ("VE") Nicole King. AR 31, 279. On April 23, 2018, the ALJ issued an unfavorable decision. AR 16-26. On February 15, 2019, the Appeals Council denied Ms. Gallegos's request for review. AR 1-3. The ALJ's decision is the final decision of the Commissioner for purposes of judicial review.

On April 30, 2019, Ms. Gallegos filed an appeal with this Court. Doc. 1. The Commissioner filed a motion to dismiss on the basis that her appeal was untimely. Doc. 5. Because the Commissioner relied on facts outside the Complaint, the Court converted it into a motion for summary judgment and denied the motion, finding that the parties disputed the material fact of whether Ms. Gallegos had timely submitted a request to the Appeals Council for additional time to file an appeal. Doc. 17. The Commissioner has not raised the argument again.

Ms. Gallegos filed her Motion To Reverse And/Or Remand on March 3, 2020, Doc. 25. Defendant Andrew Saul, Commissioner of the Social Security Administration, filed a response on May 29, Doc. 29, and Ms. Gallegos filed a reply on June 29, Doc. 32. The Social Security Administrative Record was filed on December 2, 2019. Doc. 20.

The Court reserves discussion of the medical records relevant to this appeal for its analysis.

## APPLICABLE LAW

A.   Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)   At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2)   At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3)   At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)   If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.     Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365

4

F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court

"should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

Ms. Gallegos argues that the Court should remand because: (1) the ALJ failed to include limitations arising from mental impairments in the RFC without explanation; (2) the Appeals Council failed to reasonably develop the record and consider the opinion of her treating physician, Dr. Vijayalakshmi; and (3) the ALJ failed to consider how Ms. Gallegos performed her past jobs in adopting the VE's testimony. The Court finds Ms. Gallegos's first two arguments for reversal or remand unpersuasive. It agrees, however, with Ms. Gallegos's third argument and, therefore, orders remand.

## I.   The ALJ Did Not Violate Her Duty To Analyze All Impairments At Step Four.

In a social security case, an ALJ "must evaluate the effect of a claimant's mental impairments on her ability to work." *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013). At step two of the Commissioner's five-step analysis, this requires the ALJ "to determine whether the mental impairment is 'severe' or 'not severe.'" *Id.* "But the regulations also instruct that even if the ALJ determines that a claimant's medically determinable mental impairments are 'not severe,' [s]he must further consider and discuss them as part of h[er] residual functional capacity (RFC) analysis at step four." *Id.* (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).

In *Wells*, "the ALJ found that Ms. Wells's alleged mental impairments were medically determinable but non-severe." *Id.* at 1065. "He then used language suggesting he had excluded them from consideration as part of his RFC assessment, based on his determination of non-severity." *Id.* That language was: "These findings do not result in further limitations in work-related functions in the [RFC] assessment below." *Id.* at 1069. This was error; "a finding of non-

6

severity alone would not support a decision to prepare an RFC assessment omitting any mental restriction." *Id.* at 1065, 1069.

The Tenth Circuit proceeded to ask, however, whether the error was harmless because the ALJ did "separately discuss Ms. Wells' mental impairments to some degree, when assessing her credibility as part of his RFC determination." *Id.* at 1069. "This discussion, though far from comprehensive, might have satisfied the ALJ's obligation at step four to provide a more detailed assessment of Ms. Wells' ability to complete various job functions as part of determining her RFC." *Id.* "But we need not determine whether the discussion was procedurally adequate, because the ALJ's conclusions on this point were not supported by substantial evidence." *Id.* The ALJ's failure to provide a discussion, supported by substantial evidence, of Ms. Wells's non-severe impairments at step four thus required remand. *Id.* at 1071.

Ms. Gallegos argues that *Wells* applies and governs this case. Doc. 25 at 22; Doc. 32 at 1-2. The Court agrees that this case resembles *Wells*. Here, at step two, the ALJ found that "[t]he claimant's medically determinable mental impairments of depression and anxiety, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore non-severe." AR 19. In reaching this conclusion, the ALJ analyzed the four domains of functioning and found that Ms. Gallegos had (1) no limitations in understanding, remembering, or applying information; (2) no limitations in interacting with others; (3) mild limitations in the ability to concentrate, persist, or maintain pace; and (4) no limitations in her ability to adapt or manage herself. AR 19-20. The Commissioner itself agrees that here, just like in *Wells*, "[b]ased on this [step-two] assessment, the ALJ . . . declined to include any mental limitations in Plaintiff's RFC assessment." Doc. 29 at 5. Per *Wells*, this was error.

Thus, per the instructions in *Wells*, the next step is to determine whether the ALJ nonetheless proceeded to include a discussion, adequately supported by substantial evidence, of Ms. Gallegos's mental impairments at step four. Just like in *Wells*, the ALJ here did separately discuss Ms. Gallegos's mental impairments "to some degree" when assessing the evidence as part of her RFC determination, albeit in a "far from comprehensive" discussion. AR 25; *cf. Wells*, 727 F.3d at 1069. Therefore, as in *Wells*, the Court must proceed to review whether the ALJ's discussion of Ms. Gallegos's mental impairments at step four is supported by substantial evidence.

In support of its argument substantial evidence supports the ALJ's decision, the Commissioner relies on the unpublished but persuasive case of *Alvey v. Colvin*, 536 F. App'x 792 (10th Cir. 2013). *See* Doc. 29 at 6-7. In *Alvey*, the panel found that, "[s]imilar to the step-two statement that *Wells* implied would be inadequate, at step two in this case the ALJ stated, 'The following residual functional capacity assessment reflects the degree of limitation the undersigned has found.'" 536 F. App'x at 794 (alteration omitted). "And at step four the ALJ here, unlike the ALJ in *Wells*, did not engage in any analysis of mental functions and how they may be impacted (or not) by Ms. Alvey's medically determinable mental impairments." *Id.* "It appears, therefore, that the ALJ failed to employ the step-four analytical procedure prescribed by the regulations." *Id.*

*Alvey*, too, went on to invoke the doctrine of harmless error: "We may employ a harmless-error analysis sua sponte on appeal when, as here, the record is not overly long or complex, harmlessness is not fairly debatable, and reversal would result in futile and costly proceedings. Because the evidence in this case does not support assessing any functional limitations from mental impairments, we believe it appropriate to assess harmless error and avoid

a futile remand." *Id.* at 794 (citation omitted). The court found no evidence that the claimant had functional limitations because (1) "there are no records indicating treatment by a mental practitioner," *id.*; (2) the existing records "contain few mentions of mental issues," *id.* at 794-95; and (3) the medical opinions "do not support any mental functional limitations," *id.* at 794-95.

Thus, under *Wells* and *Alvey*, the Court does not reverse simply because it determines that the ALJ substituted a step-two finding for a comprehensive discussion at step four. The Court must find that the error is harmful in the sense that a comprehensive discussion at step four could have resulted in functional limitations in the RFC. Here, the Court agrees with the Commissioner that there are no records indicating treatment by a mental practitioner or medical opinions assigning non-exertional limitations, and the existing records contain few mentions of mental issues. Ms. Gallegos points to only one record that contains a mention of any mental issues, but (just like in *Alvey*) it is devoid of any mental functional limitations. Doc. 25 at 7 (citing AR 482 & 489, in which general practitioner Dr. Castillo diagnosed Ms. Gallegos with "unstable major depression" in August of 2015 and performed a PHQ-9 examination to determine the depression was "moderately severe"). By contrast, the Commissioner highlights evidence that Ms. Gallegos's "anxiety was stable and fairly well controlled" in September 2015 and that "she was pleasant and cooperative, with a full and congruent mood and affect, and normal thought processes"; that "she reported that her medications were helping" the next month; and that "[i]n December 2015, Plaintiff's anxiety was stable, and her depression was 'optimally controlled.'" Doc. 29 at 6 (citing AR 482, 487, 479, & 562).

In addition, just like in *Wells*, the Court notes that the ALJ *did* discuss Ms. Gallegos's mental impairments at step four, when the ALJ evaluated the state-agency medical consultants' opinions:

> The State agency psychological consultants opined that that claimant had no severe mental impairment (2A; 4A). Although they used criteria that are no longer valid for evaluating the severity of the claimant's mental impairments, the consultants are psychological experts familiar with program rules and the expected limitations resulting from impairments. These experts had the opportunity to review a substantial part of the medical evidence, and evidence received after they rendered their opinions shows the claimant to have been on a stable, steady, course. It does not support a finding that the claimant's condition was materially different at her date last insured than it was at a time the opinions were rendered. The claimant's conservative treatment, consisting primarily of psychotropic drugs, supports the opinion.

AR 25. Ms. Gallegos does not dispute that she was "on a stable, steady, course" (as demonstrated by the evidence cited by the Commissioner) or whether she was primarily receiving "conservative treatment" consisting of psychotropic drugs.

Rather than addressing whether substantial evidence supports the ALJ's step-four reasoning, Ms. Gallegos focuses on what she perceives to be an internal inconsistency in the ALJ's opinion: at step two, the ALJ credited Ms. Gallegos's testimony that "she had limitations in maintaining a regular work schedule" to find mild limitations in the domain of concentration. AR 19 (citing hearing testimony); *see also* AR 50, 66-67 (Ms. Gallegos's hearing testimony that, while her medications controlled some of the physical symptoms that had contributed to her early retirement, they caused limitations in her ability to concentrate and prevented her from doing her job). Then, Ms. Gallegos argues, the ALJ "never addresses limitations in maintaining a work schedule at Step Four or provides any explanation for why no limitations in maintaining a schedule were included in the RFC." Doc. 32 at 2.

The Court disagrees. The ALJ did give an explanation for why her findings differed at steps two and four. At step four, the ALJ wrote that: "Although the claimant alleged difficulty concentrating due to her medications, there is no evidence in the record that she complained to her treating doctors of any side effects from her medications." AR 25. In other words, the ALJ considered the basis for her step-two finding of mild limitations (Ms. Gallegos's inability to

concentrate while on medications) and explained why that evidence did not translate to any functional limitations at step four. AR 25.

In sum, the Court finds both that the ALJ included a discussion of mental impairments at step four supported by substantial evidence, and that a more comprehensive discussion at step four would not have resulted in functional limitations. Further, the ALJ explained any inconsistencies between her step two and her step four findings. As a result, the Court assesses harmless error as to Ms. Gallegos's first argument.

## II.   The Appeals Council Did Not Err In Rejecting A Letter From Dr. Vijayalakshmi Or In Not Developing The Record.

After the ALJ's hearing decision, Plaintiff submitted a letter from her treating physician, Dr. Kumar Vijayalakshmi, to the Appeals Council. AR 85. In response, the Appeals Council explained: "The Administrative Law Judge decided your case through December 31, 2015. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before December 31, 2015." AR 2.

Dr. Vijayalakshmi's letter opines that:

> Ms. Gallegos is noticing increasing symptoms from arthritis because of increased stress at this time. Although her arthritis, fibromyalgia is currently under control on medications, she does experience increased fatigue, frequent pain, on and off exacerbation of her symptoms which is the course of her disease. She was previously a school principal. Based on her chronic conditions and the medication she is currently on, I do believe clinically that she is disabled and she will not be able to hold a full-time job. She will have trouble because of increased pain and fatigue.

AR 85. The letter is dated June 15, 2018.

On appeal, Ms. Gallegos argues that the Appeals Council should have considered the letter, or alternatively, should have contacted Dr. Vijayalakshmi to develop the record with respect to whether his opinion applied to Ms. Gallegos's conditions prior to December 31, 2015. Doc. 25 at 23-24; Doc. 32 at 4-5. In response, the Commissioner argues that the letter is not

temporally relevant or material and did not qualify for consideration by the Appeals Council.
Doc. 29 at 8-10.

Under its regulations, the Appeals Council will only review a case if, among other things, it receives additional evidence "that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) .[4] Whether evidence qualifies for consideration by the Appeals Council under this standard is a question of law subject to de novo review. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011). The "general rule of *de novo* review permits [the Court] to resolve the matter and remand if the Appeals Council erroneously rejected the evidence." *Id.* (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)). If the evidence does qualify and the Appeals Council erroneously rejected it, the case is remanded to an ALJ for a rehearing with the new evidence. *Id.* "If the evidence does not qualify, the Appeals Council does not consider it and it plays no role in judicial review." *Id.* Here, both parties agree that the Appeals Council did not consider the evidence. "This case therefore boils down to whether the Appeals Council should have considered the additional evidence," under the de novo standard of review. *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013).

---

[4] This regulation was recently amended. *See* Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90,987, 2016 WL 7242991 (Dec. 16, 2016) (effective January 17, 2017, with compliance required after May 1, 2017). The amendments added that the Appeals Council will only consider additional evidence if the claimant shows good cause for not informing the ALJ about the new evidence and submitting it to him or her. 20 C.F.R. § 404.970(a)(5). Neither the Appeals Council nor the Commissioner, however, contend that Ms. Gallegos failed to demonstrate "good cause" for not submitting the evidence earlier. Therefore, the Court does not consider whether Ms. Gallegos met this standard.

*The evidence is new.* Evidence is new "if it is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). There is little question that this evidence is new, and the Commissioner does not argue otherwise. The ALJ did not have a letter from Dr. Vijayalakshmi opining that Ms. Gallegos is unable to work full-time due to her conditions. The letter opinion is not duplicative or cumulative.

*The evidence is not material.* Evidence is material "if there is a reasonable possibility that it would have changed the outcome." *Threet*, 353 F.3d at 1191.[5] The Commissioner argues that the only opinion Dr. Vijayalakshmi expressed in the letter is that Ms. Gallegos "will not be able to hold a full-time job." AR 89. This is an opinion on an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1), (3) (a statement by a medical source that you are "disabled" or "unable to work" is not a medical opinion and not entitled to any special significance); *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (treating physician's statement that he did not know if the clamant would ever be able to return to work was "not a true medical opinion" and merely addressed an issue reserved to the Commissioner). Ms. Gallegos does not address this argument in her reply brief. As the opinion is entitled to no special significance and is not a true medical opinion, the Court concludes it is not possible or probable that its consideration would have changed the outcome of this case. Therefore, the evidence is not material.

*The evidence is not temporally relevant.* Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th

---

[5] The Tenth Circuit has not revisited its definition of materiality as involving a "reasonable *possibility*" after the 2017 amendments added the phrase "reasonable *probability*" to the relevant regulations. 20 C.F.R. § 404.970(a)(5) (emphasis added). Adhering to both the Tenth Circuit's case law and the regulation's new language would require a district court to conclude that the evidence meets *both* standards: that there is a reasonable probability *and* a reasonable possibility that the evidence would change the outcome. For the reasons described above, the Court concludes that the evidence meets neither standard.

Cir. 2004). The parties do not dispute that the relevant time period for this Title II application

ends on December 31, 2015, Ms. Gallegos's date last insured. The parties do dispute, however,

whether Dr. Vijayalakshmi's letter, on its face, applies to this period.

The letter is dated June 15, 2018. AR 85. As the Commissioner emphasizes, it is replete

with language that indicates it applies to the time period of June 15, 2018, not to the time period

before December 31, 2015. The letter is in present tense and emphasizes "increasing symptoms"

due to "increased stress *at this time*." AR 85 (emphasis added). Her conditions are "currently

under control on medications" but "she does experience increased" fatigue and pain. The letter

than indicates that it is based on both "her chronic conditions" (which the Court agrees could

relate to conditions existing well before 2015) and "the medication she is *currently* on." AR 85

(emphasis added). The letter then moves into the future tense: "she *will* not be able to hold a full-

time job" and "*will* have trouble because of increased pain and fatigue." *Id.* (emphasis added).

Thus, except for the lone reference to "chronic conditions," the letter reads very much like an

opinion relating to June 15, 2018 and beyond—not before.

Nonetheless, Ms. Gallegos argues, the chronic conditions the letter references were

undoubtedly present prior to December 31, 2015. Dr. Vijayalakshmi treated Ms. Gallegos on

fourteen occasions between 2012 and 2015, specifically for rheumatoid arthritis. Doc. 32 at 4.

This factor distinguishes this case from most cases in which a court finds new evidence not

temporally relevant. *See Chambers*, 389 F.3d at 1143-44 (holding that electromyography test

conducted six months later did not qualify as it "contain[ed] the first suggestion of a possible

condition of unspecified duration and as yet unsubstantiated clinical presence"); *Wall v. Astrue*,

561 F.3d 1048, 1064 (10th Cir. 2009) (clinical note relating to a head injury the claimant

sustained in November 2003 did not relate to a decision period ending in October 2003); *Wilson*

*v. Apfel*, 215 F.3d 1338, 2000 WL 719457, at *2 (10th Cir. 2000) (unpublished table decision) (letter written fifteen months later, even though it indicated that treatment was ongoing, did not relate to relevant period when the claimant's principal complaint at the ALJ hearing did not concern issue described in the letter); *Tollett v. Barnhart*, 60 F. App'x 263, 265 (10th Cir. 2003) (rejecting records based upon their post-decision creation date but also noting that "the evidence does not demonstrate that [claimant] was disabled by depression as of the date of the ALJ's decision because it does not indicate that he was suffering from depression" prior to that creation date); *Villalobos v. Colvin*, 544 F. App'x 793, 795-96 (10th Cir. 2013) (letters did not retroactively diagnose conditions predating the administrative law judge's decision and there was otherwise no evidence in the record relating to the conditions).

Given Dr. Vijayalakshmi's treatment of Ms. Gallegos before the date of her last insured and the fact that her condition has been chronic, Ms. Gallegos argues, even if the letter did not *say* it relates to the relevant period, it easily *could* relate. Doc. 32 at 4. Because Ms. Gallegos was pro se at the time, she argues, the Appeals Council had a duty to develop the record by contacting Dr. Vijayalakshmi for clarification of the relevant time period. The Court rejects this argument for two reasons. First, as explained above, the opinion is not material because it is on an issue reserved to the Commissioner. "The duty to develop the record is limited to fully and fairly developing the record as to *material* issues." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (internal quotation marks and alterations omitted) (emphasis added).

Second, as the Commissioner argues, the duty to develop the record exists where the record is insufficient to make a finding of disability. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) ("Here, there was no need to further develop the record because sufficient information existed for the ALJ to make her disability determination."). The record in this case was not

insufficient. The ALJ and the Appeals Council reached a finding of non-disability based on years of extensive treatment records (including from Dr. Vijayalakshmi); Ms. Gallegos's statements regarding her abilities; and opinions from two reviewing state agency physicians.

Thus, the Court finds the Appeals Council both properly refused to consider the evidence and committed no error in declining to contact Dr. Vijayalakshmi to further develop the record.

### III. The ALJ Erred In Preventing Ms. Gallegos From Developing Evidence About Whether Her Past Relevant Work As Actually Performed Deviated From The Dictionary of Occupational Titles's Description Of How That Work Is Generally Performed.

At step four, the ALJ found that Ms. Gallegos could return to her past relevant work "as an assistant princip[a]l and a program coordinator as generally performed." AR 26. The ALJ based this conclusion on the hearing testimony of the VE, who opined that someone with Ms. Gallegos's age, education, RFC, and past work experience could perform the jobs of assistant principal and program coordinator. AR 71-73. Relying on the Dictionary of Occupational Titles ("DOT"), the VE testified that the job of assistant principal involved occasional fingering and handling requirements, and the job of program coordinator involved frequent handling. AR 73.

At the hearing, Ms. Gallegos questioned this testimony, focusing on her past relevant work as she actually performed it:

> Claimant: Okay. I just wanted to ask if you—when you said that it would be okay doing your hand—or the finger things, or that would be an occasional kind of thing, I'm just kind of concerned about that because as assistant principal we're required to complete very involved and in-depth reports to the State Department that take a lot of typing, and computer work, and, you know, using the printers, and the machines, and things like that.
>
> And, so I was kind of concerned that you said that it would be very minimal because a lot of—as you know, education is going towards a lot of testing, and the instructional part of what I would be required to—the presentations for the teachers, and the alertness that I would need to have, and not just that, but, to take notes at these training, and these meetings, and it always seemed to fall on me to be the one to be the curriculum expert of the building.

And, so I'm kind of concerned that maybe that if you're looking at a general assistant principal, or if you're looking at more of a curriculum person because as a curriculum person, I spent a lot of time behind that desk, and—

ALJ: Okay. Let me explain a couple things that will help. We, by law, in making our decisions, we have to use a vocational resource called the Dictionary of Occupational Titles. It's a book put out by the Department of Labor. It's, I don't know how many years old. It's outdated to say the least.

Claimant: Okay.

ALJ: But, by law, it is the book that we are required to use.

Claimant: Okay.

ALJ: And, so while in general your job likely did as you performed it involve a lot of handling and fingering, the Dictionary of Occupational Titles indicates that handling and fingering would be no more than occasional. Now, together with that, the word occasional in the Dictionary of Occupational Titles it's a term of art, and it's defined as one-third of the workday.

. . . .

ALJ: So we look at two things, your past work as you performed it, and as it is performed in the—as it is generally performed in the economy, and by that we mean as it's performed per the Dictionary of Occupational Titles?

Claimant: Okay.

ALJ: So we look at both things.

Claimant: Look at both. Okay, Your Honor.

AR 75-78.

In the hearing decision, however, the ALJ did not discuss whether Ms. Gallegos could return to her past relevant work as she had actually performed it. AR 26. Instead, she found that Ms. Gallegos could return to the jobs of assistant principal and program coordinator "as generally performed." *Id.*

On appeal, Ms. Gallegos argues that this was error. She argues that, "despite assurances from the ALJ, Plaintiff's testimony regarding the way her work was performed by her as well as around the country was completely ignored without explanation." Doc. 25 at 25. "Importantly,

Plaintiff attempted to question the VE regarding how her past work was performed and was stopped by the ALJ." *Id.* Both of these statements are true: the ALJ never addressed Ms. Gallegos's past relevant work as she performed it, and the ALJ interrupted Ms. Gallegos's questioning of the VE with the ALJ's own explanation of the Dictionary of Occupational Titles and past-relevant-work standards. To determine whether these truths matter, the Court looks to the Tenth Circuit's decision in *Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045 (10th Cir. 1993).

*Andrade* involved a claimant who performed past relevant work as a general contractor. 985 F.2d at 1047. In addition to doing general contractor work as generally defined, the claimant also personally performed labor necessary to complete jobs on which he served as a general contractor. *Id.* The ALJ determined that, although the claimant's limitations might prevent him from performing the labor he previously performed, he could continue to perform the duties of a general contractor, as the DOT generally defined those duties. *Id.* at 1051. On appeal, the claimant argued that, because he could no longer do the past relevant work he actually performed, the ALJ erred in concluding that he could return to his past relevant work. *Id.*

The Tenth Circuit disagreed. It held that whether a claimant can do past relevant work as actually performed is only part of the analysis. Even if the claimant cannot return to the work actually performed, the claimant is not disabled if he or she can perform past relevant work as it is generally performed in the national economy. *Andrade*, 985 F.2d at 1050 (recognizing that under 20 C.F.R. § 404.1560(b)(2); SSR 82-61, 1982 WL 31387, at *1-2, the Agency "defines past relevant work as the claimant's ability to perform *either* 1. the actual functional demands and job duties of a particular past relevant job; *or* 2. the functional demands and job duties of the occupation as generally required by employers throughout the national economy.") (internal

quotation marks and alterations omitted, emphasis added). "Therefore, claimant bears the burden of proving his inability to return to his particular former job *and* to his former occupation as that occupation is generally performed throughout the national economy." *Id.* (emphasis added).

Ms. Gallegos did not meet this burden. Although the DOT was last updated in 1991 and assistant principals in 1991 may have typically done less typing on a keyboard than assistant principals today, the ALJ and this Court must nonetheless look to the DOT for a description of the requirements of an assistant principal position. 20 C.F.R. § 404.1566(d)(1) ("we will take administrative notice of reliable job information available from various governmental and other publications," for example, the "Dictionary of Occupational Titles, published by the Department of Labor"); *Haddock v. Apfel*, 196 F.3d 1084, 1089-90 (10th Cir. 1999); *Bowman v. Astrue*, 511 F.3d 1270, 1273 (10th Cir. 2008) ("It is well established that the agency accepts the definitions in the Dictionary of Occupational Titles as reliable evidence . . . ." (internal quotation marks omitted)). As the VE and ALJ correctly noted, under the DOT's definition, the position of assistant principal only requires "occasional" fingering (that is, typing). Assistant Principal, DOT # 091.107-010, 1991 WL 646890. And, at step four where Ms. Gallegos carries the burden (*Andrade*, 985 F.2d at 1050), Ms. Gallegos failed to demonstrate that she could not occasionally type.

The *Andrade* analysis does not end here, however. As the Commissioner correctly noted in his response, under *Andrade*, "a claimant may overcome the presumption that the DOT entry applies to him by demonstrating that the duties in his particular line of work were not those envisaged by the drafters of the category." Doc. 29 at 12. Thus, Ms. Gallegos has the opportunity "to show that the duties of h[er] prior job were sufficiently distinct from the duties of" program

coordinator and assistant principal "as described in the Dictionary to constitute a different line of work." *Andrade*, 985 F.2d at 1052 (internal quotation marks omitted).

It appears from the record that Ms. Gallegos attempted to carry this burden when she tried to cross-examine the VE about the difference in the actual requirements of her past relevant work compared to the manner the VE testified her past relevant work is generally performed according to the DOT. Rather than allowing Ms. Gallegos to pursue this line of questioning on cross-examination, however, the ALJ cut Ms. Gallegos off before the VE could answer her questions. Specifically, the ALJ intervened to explain to Ms. Gallegos that ALJs must consider both a claimant's work as actually performed and a claimant's work as described in the DOT. Although the record indicates this was a well-intentioned effort to explain the process the ALJ would undergo to determine whether Ms. Gallegos was disabled, it had the effect of preventing Ms. Gallegos from pursuing her line of questioning about how the job she performed constituted a different line of work than the job described in the DOT.

Notably, Ms. Gallegos, who was proceeding pro se at the time, alleged that her position required "a lot of typing, and computer work," that she was "kind of concerned" about the VE's testimony that this type of work would be very minimal, that it "always seemed to fall on [her] to be the one to be the curriculum expert of the building" and so she was "kind of concerned . . . if you're looking at a general assistant principal, or if you're looking at more of a curriculum person because as a curriculum person I spent a lot of time behind that desk . . . ." AR 75-76. In other words, Ms. Gallegos appeared to be pursuing a line of questioning that the duties in her particular line of work (as a curriculum person) were not those envisaged by the drafters of duties associated with the DOT's assistant principal category. But, before the VE could answer, the ALJ intervened and explained the process she would follow in considering past relevant

work. And then, once the ALJ finished this explanation, she asked Ms. Gallegos, "So is there *anything else* you want to ask [the VE]?" AR 75 (emphasis added). A reasonable person in Ms. Gallegos's position would understand the ALJ's interruption of her questioning followed by an inquiry as to whether there was "anything else" Ms. Gallegos wanted to ask about to mean that Ms. Gallegos was not allowed to attempt to elicit evidence that her duties were different than those envisaged by the drafters of duties associated with the DOT's assistant principal category.

While "the role of cross-examination in disability proceedings should remain limited," a claimant's right to due process includes the "right to cross examine vocational experts." *Haddock v. Apfel*, 196 F.3d 1084, 1090-91 (10th Cir. 1999); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1156-57 (2019) (a social security "applicant may probe the strength of [a VE's] testimony by asking [the] expert about (for example) her sources and methods—where she got the information at issue and how she analyzed it and derived her conclusions"). Here, the ALJ's limitation of Ms. Gallegos's cross-examination was particularly harmful because it prevented Ms. Gallegos from eliciting evidence described as important under Tenth Circuit precedent. In addition, by combining this limitation with an explanation about the way the ALJ would analyze Ms. Gallegos's past relevant work, the ALJ incorrectly implied to Ms. Gallegos that her line of questioning could not elicit any testimony helpful to Ms. Gallegos. This is particularly true given that, by cutting Ms. Gallegos off despite acknowledging that the duties of her actual past relevant work likely did differ from the duties of her position as described in the DOT, the ALJ implied that this difference was irrelevant. *See* AR 76-77 ("And, so while in general your job likely did as you performed it involve a lot of handling and fingering, the Dictionary of Occupational Titles indicates that handling and fingering would be no more than occasional.").

It may be that, had the ALJ allowed Ms. Gallegos to conduct her cross-examination and had the ALJ considered whatever evidence Ms. Gallegos might have elicited, the ALJ might have nonetheless concluded that the duties of her actual job were the same as the duties the drafters of the DOT envisaged for that job title. Or, the ALJ might have found that the duties Ms. Gallegos actually performed were not those envisaged by the drafters of the DOT for her job title, but then proceeded to a step-five analysis. At a step-five analysis, the ALJ might have determined that Ms. Gallegos could engage in different work than she previously performed, including, perhaps, the job of assistant principal as described in the DOT. But the ALJ did not allow Ms. Gallegos to elicit evidence about whether the duties she performed were different than those envisaged in the DOT for the same job title, did not engage in the second part of the *Andrade* analysis (whether the actual duties performed were the same as those envisaged in the DOT), and did not engage in a step-five analysis. Speculating what might have happened had the ALJ done so is exactly the type of post hoc rationalization in which the Court is prohibited from engaging. *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). As a result, the Court remands this matter for the ALJ to engage in this analysis in the first instance.

## <u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS Ms. Gallegos's Motion To Reverse And/Or Remand (Doc. 25) and remands this case for further consideration consistent with this Opinion.

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**